IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>WILMER ALICEA-CURRÁS<br><br>**Defendant.** | **Criminal No.** 22-511 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Pending before the Court is defendant Wilmer Alicea-Currás' ("Mr. Alicea" or "defendant") Amended Motion to Suppress. (Docket Nos. 44.) As discussed below, the defendant's motion is **DENIED** in part and **HELD IN ABEYANCE** in part.

**I. Background**

On October 18, 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Raúl Peña submitted an affidavit in support of an application for a search and seizure warrant ("the warrant") to Magistrate Judge Bruce J. McGivern who, after review, determined the affidavit established probable cause and signed the warrant. On October 24, 2022, ATF agents executed the warrant at Mr. Alicea's home, seizing one Sharp Brothers, J9-03124 firearm, one Zev Technologies, ZFL09327 firearm, and two cellphones. During the search of the defendant's home, ATF agents

questioned Mr. Alicea and his wife Laura Pinto-Cardozo ("Ms. Pinto"). (Docket No. 44 at p. 29.) Mr. Alicea provided incriminating statements, including a confession that he owned two firearms. The Government alleges that these firearms are machine guns, modified to shoot multiple rounds of ammunition with a single function of the trigger. Id. At the time of Mr. Alicia's interrogation, he also signed a written consent form ("the waiver") allowing ATF agents to search his cellphones.

On December 1, 2022, a federal grand jury returned an indictment charging Mr. Alicia with two violations of 18 U.S.C. § 922(o) – possession of a machinegun. (Docket No. 1.) On April 20, 2023, a federal grand jury returned a superseding indictment charging Mr. Alicia with one count of possession of machine guns in violation of 18 U.S.C. section 922(o). (Docket No. 28.)

On June 5, 2023, Mr. Alicea filed an amended motion to suppress challenging the warrant as having been issued without probable cause, claiming that he made incriminating statements during a custodial interrogation without a *Miranda* warning, and arguing that the ATF agents obtained the cellphone waiver by coercion. (Docket No. 44 at p. 2.) The United States responded to the motion to suppress, and Mr. Alicia replied. (Docket Nos. 47, 49.)

Criminal No. 22-511 (FAB)                                                3

**II. Discussion**

    **A.   Probable Cause for the Warrant**

The first matter raised by the defendant's suppression motion is whether the warrant was issued with probable cause. In reviewing the sufficiency of an affidavit supporting a search warrant, courts afford the issuing magistrate judge ample deference; "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." Illinois v. Gates, 462 U.S. 213, 236 (1983). Indeed, the Court will only reverse a magistrate judge's initial evaluation, "if we see no substantial basis for concluding that probable cause existed." United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005).

To determine the sufficiency of an affidavit, a court considers "whether the 'totality of circumstances' stated in the affidavit demonstrates probable cause to search the premises." U.S. v. Martín, 286 F.Supp.2d 43, 45 (D. Mass. 2003) (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)). "The court approaches this task in a 'practical, 'common sense' fashion' affording deference to any reasonable inferences or findings of probable cause made by a magistrate." Id. (quoting United States v. Zayas-Díaz, 95 F.3d 105, 111 (1st Cir. 1996)). "[C]ourts should not . . . [interpret] affidavits in a hypertechnical, rather than

Criminal No. 22-511 (FAB)                                                      4

a commonsense, manner." Gates, 462 U.S. at 236 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

    Courts generally presume that an affidavit submitted in support of a search warrant application is valid, "but that presumption may be surmounted by a showing that it contains either (1) a 'false statement [made] knowingly and intentionally, or with reckless disregard for the truth' or (2) 'technically accurate statements' that 'have been rendered misleading by material omissions . . . .'" U.S. v. Grant, 218 F.3d 72, 77 (1st Cir. 2000) (citations omitted).

    Defendant Alicea challenges Agent Peña's affidavit as "insufficient to establish probable cause." (Docket No. 44 at p. 9.) The affidavit prepared by Agent Peña detailed how the defendant was identified in a Mudafort Xtreme Sports DVR video firing a firearm which appeared to be fully automatic. In addition, the affidavit details how agents reviewed videos from Mr. Alicea's Instagram account in which his spouse fired a similar firearm and was told by her instructor to "release [her] finger" when she "want[ed] to stop [firing]." (Docket No. 47 Ex. 1.) The affidavit also includes pictures and videos taken from the defendant's Instagram account where multiple firearms are visible including one of the two firearms mentioned in the superseding indictment. Id.

Criminal No. 22-511 (FAB)                                                5

       Mr. Alicia contends that the information provided by Agent Peña is insufficient to establish probable cause because the affidavit contains misleading statements. (Docket No. 44 at p. 9.) In summary, the defendant argues that it is "nearly impossible" to determine that a person is shooting a machinegun by watching a video because the speed at which bullets leave the firearm depends not only on the kind of weapon in question, but also on the technical skill of the shooter. (Docket No. 44 at p. 9, Ex. 1.) Defendant also takes issue with Agent Peña's use of the phrase "single pull" of the trigger, to describe a machine gun, pointing out that the statute criminalizes those weapons that "shoot automatically with a *single function* of the trigger." Id. (emphasis in original). The defendant asserts that these statements are misleading to the point of defeating the probable cause determination. See Grant, 218 F.3d at 77.

       The arguments put forth by the defendant are nothing if not "hypertechnical." See Gates, 462 U.S. at 236. Under a totality-of-the-circumstances approach employed by the First Circuit Court of Appeals, this Court finds that the statements are not so misleading as to defeat the presumption of their validity. Id. The Court is not convinced that the use of the word "pull" instead of "function" misled Magistrate Judge McGiverin into making a defective probable cause determination. (Docket No. 47

Criminal No. 22-511 (FAB)                                                6

at p. 9.)  In addition, the defendant has failed to demonstrate that any statement in the affidavit was knowingly false or made with reckless disregard for the truth.  For these reasons, Mr. Alicea's challenge to the affidavit is unavailing.

    **B.**    **Defendant's Interrogation and Incriminating Statements**

Mr. Alicea's second suppression challenge is to the incriminating statements made to ATF agents on October 24, 2022, during the search of his home.  (Docket No. 44.)[1]  The parties do not dispute that the defendant did not receive a *Miranda* warning at the time the questioning occurred.  Therefore, the Court must determine if the statements were made pursuant to a custodial interrogation.  See United States v. Ventura, 85 F.3d 710 (1st Cir. 1996) ("Miranda warnings must be given before a suspect is subjected to custodial interrogation.") (quoting United States v. Taylor, 985 F.2d 3, 7 (1st Cir.1993)).

"The custody determination is the initial, and generally, the central inquiry:  it is the touchstone to the need for *Miranda* warnings. Ventura, 85 F.3d 710; (quoting United States v. Quinn, 815 F.2d 153, 160 (1st Cir. 1987)) (internal quotation marks omitted).  "The ultimate inquiry when determining whether a

---

[1] To date, the defendant has only identified only one incriminating statement, "upon being asked . . . how many guns do you have with that trigger . . . defendant responded, two."  (Docket No. 44 at p. 29) (internal quotation marks omitted), however, defendant claims there were other incriminating statements made at the time that should also be suppressed.

Criminal No. 22-511 (FAB)                                                    7

defendant was in custody during an interrogation is simply . . . whether in light of the circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." United States v. Mittel-Carey, 493 F.3d 36, 38 (1st Cir. 2007) (internal quotation marks omitted).  To determine whether the custody requirement is met, the First Circuit Court of Appeals has identified four relevant circumstances for a court to consider.  Namely, "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." Id. at 711, (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987).

Here, the first consideration weighs against a finding of custody.  The questioning by ATF agents of the defendant occurred in familiar surroundings, Mr. Alicea's home.  See Mittel-Carey, 493 F.3d at 40 ("[An] interrogation in a defendant's residence, without more, certainly weighs against a finding of custody.")  The second consideration, however, weighs in favor of a finding of custody.  Mr. Alicea alleges that over 15 agents were present in his home executing the search warrant when he was questioned.  (Docket No. 44 at p. 21.)   The United States

Criminal No. 22-511 (FAB)                                                    8

highlights that while a number of ATF agents were present in the home, only three agents were present when questioning occurred. (Docket No. 47 at p. 15.)  This argument is unavailing because it is the officers present at the *scene* that influences the determination of custody.  Id. (finding that while only two officers conducted the interrogation, "the presence of eight officers in the home" was a dispositive factor in determining that the investigation was custodial.)

The third consideration, the degree of physical restraint placed upon the suspect, also weighs in favor of a finding of custody.  The defendant claims that he and Ms. Pinto were not allowed to move freely around their home and were escorted by armed agents for "every quotidian task."  (Docket No. 49 at p. 14.)  The United States disputes this characterization and states that defendant and his wife had some limited freedom to conduct basic tasks.  (Docket No. 47 at p. 15.)  The Government does admit, however, that Mr. Alicea and Ms. Pinto were in the residence under armed guard, and justifies the presence of ATF agents restricting the defendant's movement as necessary given that the search warrant was for machineguns.  (Docket No. 47 at p. 15.)

While the safety of law enforcement officers is vital, the justification set forth by the United States is not responsive

Criminal No. 22-511 (FAB)                                              9

to the question of whether someone "not permitted freedom of movement within his own home, would believe he was not at liberty to terminate the interrogation and leave." Mittel-Carey 493 F.3d at 40.  Furthermore, the First Circuit Court of Appeals has identified "the level of physical control that . . . agents exercised over the defendant during the search and interrogation" as the "element that carries the most weight" of the four-part custody determination.  Id.

The Court cannot weigh the final factor in a custody determination, the duration and character of the interrogation, because the defendant and the United States fundamentally disagree on the facts.  The defendant is silent regarding the duration of the interrogation and alleges that the ATF agents never informed Ms. Pinto or him that the interviews were voluntary.[2]  In contrast, the Government claims that the defendant and Ms. Pinto were told the interview was voluntary and chose to proceed anyway.[3]  If Mr. Alicea and Ms. Pinto were told that the interviews were voluntary, this would certainly weigh heavily in favor of a finding that the interrogation was non-custodial.  See United States v.

---

[2] "[T]he duration of the interviews themselves in unclear" (Docket No. 44 at p. 24).  "In its opposing motion, the Government asserts that ATF agents informed defendant and his wife that the interview was voluntary . . . Nothing could be further from the truth." (Docket No. 49 at p. 12.)

[3] "ATF agents informed Defendant and his wife that the interview was voluntary." (Docket No. 47 at p. 16.)

Criminal No. 22-511 (FAB)                                          10

Swan, 842 F.3d 28, 31 (1st Cir. 2016).  For the above reasons, the Court will hold a suppression hearing regarding the defendants incriminating statements that Mr. Alicea claims that his interrogation occurred while he was under custody.

### C. The Search and Seizure of Defendant's Cellphone

The defendant's final challenge is to the search and seizure of his cell phone and the waiver he signed allowing that search.  The defendant maintains that he was coerced into signing the waiver, that the cellphone was not included in the warrant, and that even if it was included, the warrant did not meet the particularity requirement as to the electronic devices authorized for search and seizure.  (Docket No. 49 at p. 12.)

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986).  The coercive element depends on "whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances." United States v. Jackson, 918 F.2d 236, 241 (1st Cir. 1990) (citation omitted). Examination of the totality of the circumstances requires "the juridical equivalent of an archeological dig into:  (1) the nature of the police activity;

and (2) the defendant's situation." United States v. Hughes, 640 F.3d 428, 435 (1st Cir. 2011) (internal quotation marks omitted). When assessing whether police activity coerced the defendant, a court may consider "the length and nature of the questioning, any promises or threats made, and any deprivation of essentials (*e.g.*, food, water, sleep, bathroom facilities)." Id.

The Fourth Amendment commands that no warrants shall issue except those "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This is known as the particularity requirement. The particularity requirement "makes general searches under . . . [warrants] impossible." Marron v. United States, 275 U.S. 192, 196 (1927). It "circumscribe[s] the discretion of the executing officers" by "supply[ing] enough information to guide and control the executing agent's judgment in selecting where to search and what to seize." United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013); United States v. Tiem Trinh, 665 F.3d 1, 15 (1st Cir. 2011) (internal quotation marks omitted). In evaluating the particularity requirement, "a warrant's language must be read in context, such that "the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." United States v. Kuc, 737 F.3d at 133 (citing Andresen v. Maryland, 427 U.S. 463, 480-81 (1976)).

Criminal No. 22-511 (FAB)                                                12

      After review of the facts presented in the briefs, the Court concludes that Agent Peña's questioning was not coercive, and the signing of the waiver was voluntary.  The waiver itself clearly states in Spanish, Mr. Alicea's native language, that he has a right to consult an attorney and is signing the form voluntarily.  (Docket No. 47 Ex. 2.)  In addition, as explained below, Agent Peña was correct in stating that the warrant covered the search and seizure of the cellphone, and his claim that the prosecutor was not filing charges against the defendant was not so deceptive as to override Mr. Alicea's free will.  See Pagán-González v. Moreno, 919 F.3d 582, 593 (1st Cir. 2019).

      Finally, the defendant's argument that the cellphone is not included in the warrant is unpersuasive.  The warrant issued by Magistrate Judge McGiverin explicitly alludes to cellphones by listing "mobile phones" as included under the term "computer." (Docket No. 47 Ex. 1. at p. 24.)  The Court also finds that the particularity requirement is satisfied.  The "general tail" of the search warrant is broad, however, when read in the context of the first clause it only authorizes the search and seizure as they relate to evidence of violations to 18 U.S.C. § 992(o).  (Docket No. 47 Ex. 1.)

Criminal No. 22-511 (FAB)                                                   13

### III. Conclusion

For the foregoing reasons, defendant's Amended Motion to Suppress (Docket No. 44) is **DENIED** in part and **HELD IN ABEYENCE** in part. The Court will hold a suppression hearing only to determine whether Mr. Alicea's statements were made while he was under custody.

The suppression hearing will be scheduled under separate order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2023.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE
