**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>*Plaintiff*<br><br><br>**v.**<br><br><br>**WILMER ALICEA-CURRAS,**<br>*Defendant.* | **CASE NO. 22-511 (FAB)** |

<u>**MOTION TO DISMISS THE SUPERSEDING INDICTMENT**</u>

**TO THE HONORABLE FRANCISCO A. BESOSA**
**UNITED STATES DISTRICT JUDGE**
**FOR THE DISTRICT OF PUERTO RICO**

      **COMES NOW**, defendant Wilmer Alicea-Curras (hereon, Mr. Alicea), by and through the undersigned attorney, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure[1], very respectfully alleges and prays as follows:

## I.      INTRODUCTION

      Mr. Alicea respectfully moves for the dismissal of the superseding indictment on the grounds that it fails to state an offense under 18 U.S.C. §§ 922(o) and 924(a)(2). The factual allegations, even if assumed to be true, do not constitute a violation of the law. The forced reset triggers ("FRTs") at issue do not satisfy the statutory definition of a "machinegun" under 26 U.S.C. § 5845(b), as they do not modify the concerning firearms to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

---

[1] Fed. R. Crim. P. 12(b)(3)(B)(v)

Moreover, pursuant to the recent United States Supreme Court rulings in <u>Garland v. Cargill</u>, 602 U.S. 406 (2024), and <u>Loper Bright Enterprises v. Raimondo</u>, 603 U. S. ___, (2024), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") lacks the legal authority to reinterpret or redefine the statutory definition of a machinegun beyond what Congress explicitly intended to include devices such as FRTs. Given that the FRT is not legally classified as a machinegun, Mr. Alicea's possession of it does not constitute a violation of 18 U.S.C. § 922(o) or § 924(a)(2). Therefore, the indictment is facially invalid and must be dismissed.

## II.      PROCEDURAL BACKGROUND

1. On April 20th, 2023, a superseding indictment was filed charging Mr. Alicea with one count for possession of an alleged machinegun pursuant to 18 USC §922(o). The superseding indictment specifically states that on or about October 24, 2022, in the District of Puerto Rico and within the jurisdiction of this Court, Mr. Alicea did knowingly possess machineguns, that is, one Sharp Brothers pistol, model Jack-9, bearing serial number J9-03124, and one Zev Technologies pistol, model ZEV-FL, bearing serial number ZFL09327, both of which had been, allegedly, modified to be capable of firing more than one shot, without manual reloading, by a single function of the trigger in violation of 18 USC § 922(o) and § 924(a)(2).

2. Mr. Alicea is a *bona fide* gun owner, as he is authorized to possess them pursuant to a firearms license issued by the government of Puerto Rico.

3. The firearms were seized by the ATF on October 24th, 2022, pursuant to a Search and Seizure Warrant. Aside from the ATF's allegation that these firearms are machineguns, they were not used for any unlawful purpose.

4. However, the ATF and the Government contend that the firearms in question are machineguns due to the installation of commercially manufactured FRTs, specifically the "Powered by Graves,

model Alamo-15" triggers. These triggers, which are available in the open and legitimate firearms market, can be purchased from major brands online or in retail stores.[2]

5. As previously stated to this Honorable Court, the prosecution of individuals possessing FRTs, as in this case, is based on an interpretation made by the ATF through an Open Letter (hereon, the Open Letter) published on March 22, 2022. The letter is neither published nor codified in the Code of Federal Regulations. The ATF's letter asserts that **some of the forced reset triggers may convert a weapon into a machinegun**; however, it does not specify which brands, makes, or specifications are affected.[3]

### III.    LEGAL STANDARD

#### A. Dismissal is Warranted as the Classification of FRTs as Machineguns under 26 U.S.C. § 5845(b) is a Question of Law, not a Question of Fact.

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."[4] Pursuant to Rule 12(b)(3)(B)(v), a defendant may move to dismiss an indictment for failure to state an offense.

In determining whether dismissal is warranted, the court must evaluate whether the indictment adequately alleges all the essential elements of an offense as defined by the applicable statutes. If the facts alleged, even when accepted as true, do not constitute a statutory violation, dismissal is required. As the Supreme Court noted in United States v. Sampson, 371 U.S. 75, 79 (1962), a motion to dismiss an indictment tests its "sufficiency to charge an offense".

Furthermore, when evaluating a motion to dismiss based on the sufficiency of an indictment, the court is not required to weigh the evidence or resolve factual disputes. Rather, the court's role

---

[2] *See* screen captures of FRTs available for purchase online, herein attached as Exhibit (A).
[3] ATF's Open Letter is herein attached for this Honorable Court's easy access.
[4] Fed. R. Crim. P. 12(b)(1)

is to accept the factual allegations in the indictment as true and assess whether those allegations, as a matter of law, constitute a criminal offense under the relevant statute. If the indictment does not meet this standard—if the conduct described does not conform to the legal definition of the charged offense—then dismissal is warranted. As the Tenth Circuit held, "[u]nder this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994) (emphasis in original). United States v. Brissette, 919 F.3d 670, 676 (1st Cir. 2019).

Typically, when such a motion seeks to dismiss an indictment, its resolution will turn on pure questions of law regarding the sufficiency of the indictment's allegations. *See* United States v. Brissette, 919 F.3d 670, 675 (1st Cir. 2019). United States v. Dion, 37 F.4th 31, 33-34 (1st Cir. 2022). A court may grant a motion to dismiss an indictment if the defect is essentially a question of law. United States v. Flores, 404 F.3d 32, 324 (5th Cir. 2005). "The propriety of granting a motion to dismiss an indictment under F.R.Crim. Pro. Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Korn, 557 F.2d 1089, 1090 (5th Cir. 1977) (quoting United States v. Miller, 491 F.2d 638, 647 (5th Cir. 1974)). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* (citing United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976)).

This conclusion is supported by the Supreme Court's opinion in United States v. Covington, 395 U.S. 57, 60-61 (1969). In *Covington*, the defendant filed a pretrial motion to dismiss the indictment on the ground that he had a complete defense in that his Fifth Amendment privilege against incrimination had been violated. The district court granted the motion and dismissed the indictment. The government appealed to the Supreme Court, which rejected the government's

contention that the dismissal was improper and affirmed the district court. The Court found that the district court properly ruled on the pretrial motion because it involved an issue of law and not a factual dispute. As the Supreme Court explained in *Covington*, under FED. R. CRIM. P. 12, a defense is capable of determination without a trial of the general issue, if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense". As recognized by the Fifth Circuit Court of Appeals, this approach avoids the waste of judicial resources that results from "legally meritless cases being sent to trial." United States v. Flores, 404 F.3d 320, 325-26 (5th Cir. 2005) (citing United States v. Salman, 378 F.3d at 1269 (11th Cir. 2004) (per curiam)) (recognizing the disadvantages of prohibiting a district court from making pretrial legal determinations on undisputed facts).

In this case, the matter before this Honorable Court is a clear question of law: Does the definition of a machinegun, as set forth in 26 U.S.C. § 5845(b), encompass firearms equipped with FRTs? As will be further demonstrated in this motion, supported by authoritative Supreme Court decisions, other pertinent legal precedents, and expert witness analysis, the answer is unequivocally no. Consequently, the indictment against Mr. Alicea, predicated on the erroneous legal interpretation that FRTs modify a firearm into a machinegun, is fatally flawed and must be dismissed as a matter of law.

### B. Statutory Background

The National Firearms Act of 1934 ("NFA") regulates certain firearms in interstate commerce. 26 U.S.C. §§ 5801 *et seq*. At the time of its proposal, the NFA "was known to many as the 'the Anti-Machine Gun Bill.'" Cargill v. Garland, 57 F.4th 447, 450 (5th Cir. 2023) (en banc), aff'd sub nom., 602 U.S. 406 (2024). Among other things, the NFA criminalized the possession or transfer of certain unregistered firearms while also prohibiting the registration of firearms otherwise

banned by law. 26 U.S.C. §§ 5812(a), 5861. In the decades following its enactment, Congress passed the Gun Control Act of 1968 (the "GCA"), which criminalized the possession of firearms for certain classes of people. 18 U.S.C. § 921 *et. seq.*

The GCA was amended in 1986 by the Hughes Amendment to the 1986 Firearm Owners Protection Act—colloquially referred to as "the machinegun ban"— in order to prohibit the possession or transfer of machineguns. 18 U.S.C. § 922(o). With limited exceptions, it is a federal felony today to possess or transfer a machinegun. *Id.* This offense is punishable by up to ten years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2). According to the NFA and GCA, a "machinegun" is statutorily defined as:

> [a]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine-gun [sic], and any combination of parts from which a machine-gun [sic] can be assembled if such parts are in the possession or under the control of a person. 26 U.S.C. § 5845(b) (providing the original statutory definition of "machinegun"); 18 U.S.C. § 921(a)(24) (incorporating the NFA's definition of "machinegun" into the GCA).

In other words, a machinegun is a "rifle capable of automatic fire" due to "firing more than one round per trigger-action." <u>Cargill</u>, 57 F.4th at 452. Firearms incapable of automatic fire per trigger-action are thus not machineguns. *Id.*

The statute specifies the precise action that must "automatically" cause a weapon to fire "more than one shot"—a "single function of the trigger." If something more than a "single function of the trigger" is required to fire multiple shots, the weapon does not satisfy the statutory definition. As Judge Henderson put it, the "statutory definition of 'machinegun' does not include a firearm that shoots more than one round 'automatically' by a single pull of the trigger AND THEN SOME." <u>Garland v. Cargill</u>, 602 U.S. 406, 424 (2024).

In light of this statutory framework, it is evident that the definition of a "machinegun" under both the NFA and GCA is precise and unambiguous, focusing solely on the mechanical function of the trigger. The requirement that a weapon must shoot, automatically more than one shot, without manual reloading, by a single function of the trigger, is a stringent criterion that cannot be expanded or reinterpreted to include devices that do not meet these specific conditions. FRTs, which necessitate a separate and distinct trigger function for each shot, fall outside this statutory definition. Therefore, classifying FRTs as machineguns not only contravenes the explicit statutory language, but also contradicts the authoritative judicial interpretation set forth in *Garland*. Consequently, the statutory and judicial precedent mandates that the charge against Mr. Alicea, predicated on this misinterpretation, must be dismissed.

### C. Regulatory Background

The United States Congress delegated authority to the ATF to regulate firearms in interstate commerce. For decades, the ATF's regulations mirrored the federal statutory definition of "machinegun." Compare 27 C.F.R. §§ 478.11, 479.11 (2017) with 26 U.S.C. § 5845(b). This statutory parity was disrupted in 2018 when the ATF broadened the meaning of machinegun by re-interpreting the statutory definition to add the following language:

> For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter. 27 C.F.R § 479.11 (2018).

Three years after the ATF broadened its interpretation of the statutory definition, agency subdivisions issued reports applying the revised definition of "machinegun" to FRTs. For instance,

the Firearms Technology Criminal Branch ("FTCB") issued a Technical Examination Report on July 15, 2021, which purportedly classified the FRT-15—a version of the FRT—as a machinegun.

The FTCB issued a similar report several months later on October 21, 2021, regarding the Wide Open Trigger ("WOT") version of the FRT. Both the WOT and the FRT-15 operate on the same mechanical principles. At the beginning of the next year, the FTCB issued its "Open Letter to All Federal Firearms Licensees" on March 22, 2022. The Open Letter begins by stating that the ATF **"recently examined devices commonly known as "forced reset triggers" (FRTs) and has determined that *some of them* are "firearms" and "machineguns" as defined in the National Firearms Act (NFA), and "machineguns" as defined in the Gun Control Act (GCA)**. (emphasis added).

Further into the letter, the ATF elaborates, **"ATF's examination found that *some* FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger. For this reason, ATF has concluded that FRTs that function in this way are a combination of parts designed and intended for use in converting a weapon into a machinegun, and hence, *ATF has classified these devices as a "machinegun"* as defined by the NFA and GCA**." (emphasis added).

Building on this point, the letter emphasizes, "**[a]ccordingly, ATF's position is that any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a "machinegun", and is therefore subject to the GCA prohibitions regarding the possession, transfer, and transport of machineguns under 18 U.S.C. §§ 922(o) and 922(a)(4).** They are also deemed subject to registration, transfer, taxation, and possession restrictions under the NFA. *See* 26 U.S.C. §§ 5841, 5861; 27 CFR 479.101." (emphasis added).

In support of its stance, the ATF clarified that "[u]nder 26 U.S.C. § 5871, any person who violates or fails to comply with the provisions of the NFA may be fined up to $10,000 per violation and is subject to imprisonment for a term of up to ten years. Further, pursuant to 26 U.S.C. § 5872, any machinegun possessed or transferred in violation of the NFA is subject to seizure and forfeiture. **Under 18 U.S.C. § 924(a)(2), any person who violates § 922(o) may be sent to prison for up to 10 years and fined up to $250,000 per person or $500,000 per organization**." (emphasis added).

Concluding its argument, the letter asserts "**[b]ased on ATF's determination that the FRTs that function as described above are "machineguns" under the NFA and GCA**, it now intends to take appropriate remedial action with respect to sellers and possessors of these devices." (emphasis added).

The Government's contention that the indictment against Mr. Alicea is based solely on his alleged violation of 18 U.S.C. § 922(o), independent of the ATF's Open Letter, fails to acknowledge the pivotal role that the letter's interpretation plays in defining what constitutes a "machinegun" under federal law. While the Government may assert that the Open Letter does not alter the statutory definition provided in 26 U.S.C. § 5845(b) or the prohibition under § 922(o), the fact remains that the ATF's interpretation, as articulated in the Open Letter, serves as the de facto basis for the classification of FRTs as machineguns.

This interpretation is not a mere ancillary consideration; it is integral to the legal framework upon which the indictment is built. The decision to classify FRTs as machineguns—a classification that directly leads to the charges under § 922(o)—is inextricably tied to the ATF's interpretative stance. Without this interpretation, the legal justification for considering FRTs as machineguns would collapse, thereby undermining the very foundation of the indictment.

Moreover, the argument that the ATF's Open Letter is merely an interpretation of the statute, and not law, fails to recognize the practical impact that such interpretations have in the enforcement of federal statutes. The ATF's classification, as laid out in the Open Letter, effectively determines what is prosecuted under § 922(o). Therefore, to suggest that the indictment is independent of the ATF's interpretation is to ignore the substantive influence that the Open Letter exerts on the prosecution's decision to bring charges against Mr. Alicea.

Ultimately, the Government's attempt to dissociate the indictment from the ATF's Open Letter is untenable. The interpretation provided in the letter is a fundamental component of the Government's case, and without it, the indictment lacks a solid legal foundation. The reliance on the ATF's interpretation underscores the necessity of closely scrutinizing the validity of the charges, as the very basis of the indictment is based on a regulatory interpretation that exceeds statutory boundaries. Therefore, in light of the statutory framework and judicial precedent, this Honorable Court should find the indictment against Mr. Alicea legally insufficient and dismiss it accordingly.

### D. Forced Reset Triggers do not Meet the Statutory Definition of Machinegun

In this case, the Government alleges that the firearms Mr. Alicea possessed—specifically, a one Sharp Brothers pistol, model Jack-9, bearing serial number J9-03124, and one Zev Technologies pistol, model ZEV-FL, bearing serial number ZFL09327—are machineguns because they are equipped with FRTs. An FRT is an assembly that allows the trigger of a semi-automatic weapon to reset quicker than it otherwise would using the standard trigger-return spring. Due to the swift trigger reset, a firearm equipped with an FRT enables the user to fire at a faster rate than with a traditional trigger. Nat'l Ass'n for Gun Rights, Inc. v. Garland, Civil Action No. 4:23-cv-00830-O, 2024 U.S. Dist. LEXIS 131012, at *3-4 (N.D. Tex. July 23, 2024).

Reviewing the basic mechanism of a firearm is necessary to understand how an FRT works. The basic function of any trigger is to release the hammer. This occurs when the trigger is pulled back to the point that a "trigger sear" releases the hammer from its retained position. Once released by the trigger, the hammer pivots to contact the firing pin. Once contacted, the firing pin then strikes a chambered ammunition cartridge or "round," causing gunpowder in the cartridge to combust. The combustion effect propels the cartridge's bullet out of the barrel of the firearm. Once fired, a standard semi-automatic trigger returns to its "reset" state—ready-to-fire or "set" position—by allowing the firearm to function once again due to starting the mechanism anew. In other words, the firearm only functions again upon the reset of the trigger to release the hammer. Nat'l Ass'n for Gun Rights, Inc. v. Garland, *supra*, at *4. *See* Brian Luettke, Expert Witness Report at 1 (Aug. 13, 2024) ("After S/A Hunt pulled the trigger rearward and fired a shot, his trigger finger moved forward along with the trigger to the reset position.").[5]

An FRT is a device that forcibly returns the trigger to its reset state. In the commercialized FRT designs at issue in this litigation, the trigger is forcibly reset by the hammer when the bolt carrier cycles to the rear. A "locking bar" mechanically locks the trigger in its reset state, preventing the user from moving the trigger rearward to function by releasing the hammer, until the bolt has returned to the in-battery position and the firearm is safe to fire. When firing multiple shots using an FRT, the trigger must still reset after each round is fired and must separately function to release the hammer by moving far enough to the rear in order to fire the next round. Nat'l Ass'n for Gun Rights, Inc. v. Garland, *supra*, at *4-5. *See* Luettke, *supra*, at 2. ("[. . . ] Alamo-15 triggers reset forward after each shot, which is a separate function of the trigger").

As Brian Luettke further stated in his expert witness report:

---

[5] Brian Luettke, Expert Witness Report is herein attached for this Honorable Court's easy access.

Based upon watching the function of the triggers during the test firing, the firearms and triggers examination, my machinegun shooting experience starting back in 1984, and the Supreme Court's decision in *Garland v. Cargill*, it is my opinion the two Powered by Graves model Alamo-15 triggers are not machineguns as defined in Title 26 U.S.C. § 5845(b), whether or not they are installed in the Sharps Bros and/or ZEV Technologies firearms. *See* Luettke, *supra*, at 2.

Luettke's thorough examination of the FRTs during the test firing confirms that these devices do not enable the firearms to discharge more than one round per single function of the trigger. Instead, the FRT-equipped firearms operated as semi-automatic weapons, requiring a distinct trigger function for each shot. This finding clearly indicates that FRTs do not meet the statutory definition of a machinegun under 26 U.S.C. § 5845(b). Therefore, the classification of FRTs as machineguns is fundamentally erroneous, and the indictment predicated on this misclassification must be dismissed.

### E. Semiautomatic Rifle Trigger Mechanics and Single Function of the Trigger

For this Honorable Court's convenience, we include an overview of the relevant components of a semiautomatic rifle:



Figure 1

The trigger is a simple lever that moves backward and forward. P. Sweeney, *Gunsmithing the AR-15*, p. 131 (2016). The square point at the top left edge of the trigger locks into a notch at the bottom of the hammer. P. Sweeney, *Gunsmithing: Rifles* 269 (1999). The hammer is a spring-loaded part that swings forward toward the barrel and strikes the firing pin, causing a shot to fire. *Ibid*. The disconnector is the component responsible for resetting the hammer to its original position after a shot is fired. *Ibid*.

We turn next to how these components operate:


Figure 2

When the shooter engages the trigger by moving it backward (as indicated by the arrow), the square point of the trigger pivots downward and out of the notch securing the hammer. *Ibid*. This movement releases the spring-loaded hammer, allowing it to swing forward. *Ibid*.


Figure 3

At the top of the hammer's rotation, it strikes the firing pin, causing the weapon to fire a single shot. *See ibid*.


Figure 4

The firearm then ejects the spent cartridge from the chamber and loads a new one in its place. D. Long, The Complete AR-15/M16 Sourcebook 206 (2001). The mechanism that performs this task swings the hammer backward at the same time. *Ibid*.



Figure 5

As the hammer swings backward, it latches onto the disconnector. Sweeney, Gunsmithing: Rifles, at 269. This latching (circled above) prevents the hammer from swinging forward again after a new cartridge is loaded into the chamber. *Ibid*. The disconnector will hold the hammer in that position for as long as the shooter holds the trigger back, thus preventing the firearm from firing another shot. *Ibid*.



Figure 6

Finally, when the shooter takes pressure off the trigger and allows it to move forward (as indicated by the arrow), the hammer slips off the disconnector just as the square point of the trigger rises into the notch on the hammer. *Ibid*. The trigger mechanism is thereby reset to the original position shown in Figure 1. A semiautomatic rifle must complete this cycle for each shot fired. This process is what constitutes a "single function of the trigger." A shooter may fire the weapon again after the trigger has reset, but only by engaging the trigger a second time and thereby initiating a new firing cycle. For each shot, the shooter must engage the trigger and then release the trigger to allow it to reset. Any additional shot fired after one cycle is the result of a separate and distinct "function of the trigger."

**F. Garland v. Cargill**

Mr. Alicea's argument for dismissal is firmly rooted in the recent Supreme Court decision in Garland v. Cargill, *supra*, a landmark ruling decided by a 6-3 majority that directly interprets the statutory definition of "machinegun" under 26 U.S.C. § 5845(b). In *Garland*, the Court reaffirmed that the statutory definition of a machinegun necessitates that a weapon must fire "automatically more than one shot...by a single function of the trigger." This definition is precise and unambiguous, excluding devices that do not meet these specific criteria.

The Supreme Court unequivocally embraced the reasoning employed by a plurality of judges in the Fifth Circuit regarding the exact statutory language at issue here. As affirmed in Garland, 602 U.S. at 410, this rationale is binding on this Honorable Court. According to the Supreme Court's opinion, a weapon that qualifies as a machinegun under § 5845(b) of the NFA must be capable of (1) firing multiple rounds by a single function of the trigger and (2) do so automatically. *Id*. at 415. In other words, the NFA unambiguously defines a machinegun as a weapon that fires automatically once the trigger performs a single function. *Id*. at 410-11, 415.

The statutory text grammatically links the definition to the movement of the trigger. *See* Garland, 602 U.S. at 422 (The statutory definition instead hinges on how many shots discharge when the shooter engages the trigger). *Garland* underscores that the definition is solely concerned with the mechanical operation of the trigger rather than the actions of the user. *Id*. As a result, which firearms qualify as machineguns turns entirely on the movement of the trigger itself rather than the trigger finger. *Id*. (emphasizing that Section 5845(b) does not define a machinegun based on what type of human input engages the trigger). Based on this, *Garland* rejected the ATF's regulatory interpretation of "machinegun" because it exceeded the agency's statutory authority in violation of the APA. *Id*. at 415.

As *Garland* explained, the ATF's expanded definition was aimed at criminalizing the manufacture, sale, and possession of bump stocks following the tragic Las Vegas shooting. *Id.* at 412. Similar to FRTs, a bump stock is an accessory that attaches to a semi-automatic weapon to increase the rate of fire. Garland, 602 U.S. at 411-12. By harnessing the firearm's natural recoil to quickly reengage the trigger, a skilled shooter utilizing this "bump firing" technique can rapidly fire multiple rounds. *Id.* Yet despite this increase in firing speed, *Garland* determined that bump stocks are not machineguns because the device does not meet both elements of the statutory definition: (1) capable of firing multiple rounds by a single function of the trigger and (2) operate automatically. *Id.* at 415.

As the Supreme Court's statutory interpretation makes clear, a "single function of the trigger" means what it says: a single function of the *trigger*. It does not mean a single pull by the shooter or some analogous motion. Garland, 602 U.S. at 421-22. In fact, the word "pull" is not found anywhere in the statutory definition. The only place "pull" exists is in the ATF's broadened regulatory definition interpreting the statute. *See* 27 C.F.R § 479.11 (2018) ("'[S]ingle function of the trigger' means a single pull of the trigger[.]"). But according to the Supreme Court in *Garland*, the statutory definition unambiguously turns on the movement of the trigger and not a trigger finger. Garland, 602 U.S. at 422. Indeed, the statute does not say "by a single *pull* of the trigger." Nor does it say "by single function of the trigger *finger*."

Rather, the best reading of the statutory definition is that after the shooter initiates the trigger's relevant function by some action—such as pulling the trigger or some other action by the user—it is the follow-on action of the trigger acting out its mechanical purpose that informs the operative "function." Based on this reasoning, accepting the Governments' implied interpretation that "function" is synonymous with "pull" would impermissibly read words into the statute.

Furthermore, it would directly contradict the statutory definition and the Supreme Court's holding in *Garland.*

"Function" and "pull" have never been synonymous. The former is based on a mechanical perspective whereas the latter is based on the shooter's perspective. Garland, 602 U.S. at 416 ("The phrase 'function of the trigger' thus refers to the mode of action by which the trigger activates the firing mechanism.").

Even assuming *in arguendo* that "single function of the trigger" refers to "single pull of the trigger," the second definitional requirement, "automatically." 26 U.S.C. § 5845(b), would still have to be satisfied. Importantly, the statutory definition does not endorse an isolated reading of this second requirement. Rather, "the phrase 'by a single function of the trigger' modifies the adverb 'automatically.'" Cargill, 57 F.4th at 463. That is because "automatically" is understood as limited by the "single function of the trigger" clause. *Id.* On its own, "automatically" simply means that firing "maintain[s] if all a shooter does it initially pull the trigger." *Id.* This alone is insufficient to qualify as a machinegun.

### G. Application of Garland to Forced Reset Triggers

The Supreme Court's ruling in Garland v. Cargill, *supra*, provides clear and binding guidance on the interpretation of the statutory definition of a "machinegun" under 26 U.S.C. § 5845(b). It would be untenable to suggest that *Garland*'s holding is limited solely to bump stocks and does not extend to FRTs. Such a narrow reading fundamentally misrepresents the scope of the Supreme Court's ruling. *Garland*'s interpretation of the statutory language applies broadly to any device, including FRTs, that does not shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The Court's analysis focuses on the mechanical function of the trigger—specifically, whether it enables the firearm to fire more than one shot

17

automatically with a single trigger action. Because FRTs require a separate and distinct trigger function for each shot, they clearly fall outside the statutory definition of a machinegun as articulated in *Garland*.

For each and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface. Because the operative mechanical function of the trigger is to release the hammer, that the trigger of an FRT-equipped firearm functions for each shot fired disqualifies it as a machinegun under the current statutory definition. Moreover, if all the shooter does is initially pull the trigger, the FRT-equipped firearm will only fire one round. And if the shooter attempts to reset and hold the trigger in a fully depressed position so that the trigger cannot reset, the weapon will malfunction. Nat'l Ass'n for Gun Rights, Inc. v. Garland, *supra*, at *53-54.

Only by erroneously continuing to characterize a "single function of the trigger" as a "single constant rearward pull of the trigger," may the Government transform the required statutory focus away from the objective trigger mechanics to the subjective actions of the gun user instead. This is incorrect and is the same rewriting of the statute the ATF had already attempted—and failed—to do with bump stocks. Garland, 602 U.S. at 428-29; *see also id.* at 429 (Alito, J., concurring) (recognizing that "the statutory text is clear, and we must follow it"). For purposes of statutory interpretation, it matters not what human input is required to activate the trigger. All that matters is whether more than one shot is fired each time the trigger functions.

As *Garland* explained, courts cannot look to the shooter's actions in deciding whether FRTs are machineguns. Garland, 602 U.S. at 422-23 (majority op.). Indeed, the "notion that the definition turns on the actions of an unnamed shooter is inconsistent with both the [definition's] grammatical and statutory contexts." Cargill, 57 F.4th at 461. In light of the Supreme Court's decision, the critical

18

consideration is how the trigger mechanically functions. Garland, 602 U.S. at 412. That function is the "follow-on action where the trigger acts out its mechanical design or purposes" *after* the shooter has initiated it by some action. Cargill, 57 F.4th at 460.

    *Garland* leaves no doubt that this required "action" is in relation to the function of the trigger itself, which is defined purely mechanically under the statute rather than an action taken by the user. Cargill, 57 F.4th at 461 ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire. . . . Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."). Whether prudent or not, "Congress defined the term 'machinegun' by reference to the trigger's mechanics." *Id.* In a hammer-fired gun like those an FRT enhances, the trigger's function is to release the hammer as part of a "simple mechanical process." *Id.* at 459. By disengaging the hammer from the sear, the trigger in FRTs still initiates the "process" that "happens every single time one bullet is fired." *Id.*

    Moreover, as *Garland* makes clear, "Congress did not write a statutory definition . . . keyed to when a firing sequence begins and ends." *Id.* at 423. Instead, the statutory definition hinges on the trigger's operative mechanical function: the release and reset of the hammer as part of certain functions in the firing sequence that must recur before each round is fired. *Id.* An FRT-equipped firearm releases the hammer for every shot it fires. By contrast, the auto sear in a fully automatic gun takes over to retain and release the hammer for all subsequent shots so that its trigger functions only once in a string of automatic fire. *See* Cargill, 57 F.4th at 454 (contrasting the auto sear of a "fully automatic gun" with a bump stock).

    An FRT-equipped firearm contains a locking bar that prevents a subsequent trigger function until the weapon is safe to fire again. But this is not the same as an auto sear. Unlike an auto sear, the locking bar still prevents firing until it is safe to do so again after unlocking the trigger. Because

the FRT's locking bar does not alter the basic mechanical process where the trigger moves for every shot fired, this distinguishes an FRT from a fully automatic weapon with an auto sear. Whether that movement occurs by the shooter "apply[ing] forward pressure to the weapon's forebody in order to maintain the shooting mechanism" for bump stocks, Cargill, 57 F.4th at 454, or by the hammer maintaining the shooting mechanism for FRTs, the fact remains that the trigger resets the hammer each time before the next shot can be fired.

*Garland* explains that this is a separate function of the trigger. Like bump stocks, FRTs do not enable a weapon to automatically fire multiple rounds with a single function of the trigger itself. To wit, even the name for the device makes this clear: a *forced* reset trigger rather than an *automatic* reset trigger. Nat'l Ass'n for Gun Rights, Inc. v. Garland, *supra*, at *58. In a machinegun, the trigger must be held in its rearmost position for the gun to fire automatically.

The machinegun's trigger does not reset in between each shot. But in an FRT-equipped firearm, the trigger *must* still reset in between each shot—even when depressed in a rearward state. Much like in *Garland*, the Government here cannot overcome the plain reading of the statutory language. When the ATF revised its interpretation of machinegun to define a "single function of the trigger" as the same thing as "a single pull of the trigger and analogous motion," its definition conflicted with the definition provided by the controlling statutes. 27 C.F.R. § 479.11 (2018).

And where an agency regulation contradicts the statute, not only is that regulation arbitrary and capricious, but the statute governs. Because of this contradiction, the ATF's broadened definition of machinegun—and subsequent classification of FRTs—is unlawful and cannot serve as the legal basis on which Mr. Alicea's superseding indictment stands.

Furthermore, unlike a switch-activated device that takes over as the legal trigger of the weapon, FRTs do not alter the basic operation the trigger: the trigger must still move sufficiently

20

rearward for each shot based on external manual input from the shooter. This, in turn, activates the trigger's function—releasing and resetting the hammer—which occurs before each subsequent shot and is not set in motion by a switch. An FRT-equipped firearm performs the same mechanical function as any normal trigger by releasing the hammer prior to each shot. With FRTs, an external force must be applied by the user to cause the trigger to function (or actuate) each time a shot is fired. Without a modification, an FRT, like a nonmechanical bump stock, still requires an external force to be applied by the user to cause the trigger to function each time a shot is fired. Nat'l Ass'n for Gun Rights, Inc. v. Garland, *supra*, at \*60-61.

The closest that the Government may come to analogizing FRTs to machineguns is by pointing to two similarities that FRTs and machineguns share: (1) the comparable rates of fire and (2) the absence of a disconnector. But these arguments are foreclosed by the statutory definition and *Garland*. The statutory definition does not define machineguns "according to how quickly they fire." Cargill, 57 F.4th at 464. Nor does it identify the absence of a disconnector as the dispositive characteristic. *See id.* at 460 (declining to "read words into the statute").

Instead, a weapon need only be capable of firing automatically once the trigger itself performs a single function to qualify as a machinegun under the statute. Garland, 602 US at 460, 465. If Congress wants to amend the statutory definition in the future to define machineguns based on rate of fire or absence of a disconnector, it knows how to do so. Until such time, a comparable—and even identical—rate of fire and absence of a disconnector have no bearing on whether a firearm is a machinegun. Therefore, these comparators should not have any bearing on the Court's determination that FRTs are not machineguns.

In any event, Congress could have linked the definition of "machinegun" to a weapon's rate of fire. But, it instead enacted a statute that turns on whether a weapon can fire more than one shot

"automatically . . . by a single function of the trigger." §5845(b). And, it is never the judiciary's "job to rewrite . . . statutory text under the banner of speculation about what Congress might have done." Garland, 602 U.S. at 428, 144 S. Ct. at 1626 (citing Henson v. Santander Consumer USA Inc., 582 U.S. 79, 89, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017)).

In light of the Supreme Court's clear guidance in Garland, this Honorable Court must conclude that the ATF's classification of FRTs as machineguns is not supported by the statutory language of 26 U.S.C. § 5845(b). The statute unambiguously defines a machinegun as a weapon that fires more than one shot "automatically by a single function of the trigger." As demonstrated, FRT-equipped firearms do not meet this definition because they require a separate trigger function for each shot fired.

The ATF's attempt to expand the statutory definition to include FRTs is an overreach of its regulatory authority and conflicts with the plain language of the statute. Moreover, this reinterpretation was *explicitly* rejected by the Supreme Court in Garland, which reaffirmed that statutory text, not agency reinterpretation, is controlling.

Allowing the indictment against Mr. Alicea to stand on the basis of this flawed regulatory interpretation would not only perpetuate a clear legal error, but also undermine the integrity of the statutory framework, and contravene the principles set forth in Garland. Accordingly, this Honorable Court should grant this motion to dismiss the superseding indictment, as it is based on an unsustainable legal foundation.

## H.  Absence of Chevron Deference

The Supreme Court has never held that the Government's reading of a criminal statute is entitled to any deference. United States v. Apel, 571 U.S. 359, 369 (2014). And, in any case, no such deference could apply here after the Supreme Court's recent decision in Loper Bright

Enterprises, et al. v. Raimondo, Secretary of Commerce, et al, 144 S. Ct. 2244 (2024). *Loper Bright Enterprises* involves two consolidated cases concerning the interpretation and application of the *Chevron* deference, legal doctrine stemming from Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The central question addressed by the Supreme Court was whether *Chevron* should be overruled or clarified.

In deciding, the Supreme Court overruled *Chevron*, declaring that courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as required by the Administrative Procedure Act (APA). The Court emphasized that *Chevron* deference had prevented courts from exercising the judicial power vested in them by Article III to determine what the law is. Loper Bright Enters, 144 S. Ct. at 2250.

Additionally, the Court held that the doctrine of *stare decisis*, which directs courts to adhere to precedent, does not mandate the continuation of the *Chevron* framework. The Court reasoned that the quality of *Chevron's* reasoning, the workability of its rule, and reliance on the decision weighed in favor of overturning *Chevron*. Loper Bright Enters, 144 S. Ct. at 2251. The APA mandates that reviewing courts "decide all relevant questions of law" and "interpret constitutional and statutory provisions," without deference to agency interpretations Loper Bright Enters., 144 S. Ct. at 2252.

The *Chevron* doctrine's presumption that ambiguities in statutes are implicit delegations to agencies is not aligned with the APA's text, which does not provide a deferential standard for legal interpretations Loper Bright Enters., 144 S. Ct. at 2253. The Supreme Court reaffirmed that it is the judiciary's responsibility to interpret the law, as articulated in foundational cases such as Marbury v. Madison, 5 U.S. 137 (1803) and further clarified by the APA's provisions. Loper Bright Enters., 144 S. Ct. at 2248.

Following the Supreme Court's ruling in *Loper Bright Enterprises*, this Honorable Court is compelled to exercise its independent judgment in interpreting the statutory definition of a machinegun under 26 U.S.C. § 5845(b). The ATF's classification of FRTs as machineguns represents an overreach of regulatory authority that cannot be legitimized through deference. While *Loper Bright Enterprises* addressed a civil context, the principle of limiting agency overreach applies with even greater force in criminal prosecutions, where the stakes involve the potential deprivation of liberty. The ATF's expansion of the definition of "machinegun" to include FRTs epitomizes the type of overreach the Supreme Court sought to curb in both *Loper Bright Enterprises* and *Garland*. The clear mandate from *Loper Bright Enterprises* is that the judiciary must independently determine the meaning of statutory language, particularly when agency interpretations extend beyond the clear intent of Congress.

Thus, when applying the principles of *Loper Bright Enterprises* to this case, it is evident that the ATF's interpretation of § 5845(b) to include FRTs is legally untenable. The statutory language is not only explicit but reflects Congress's clear intent to exclude devices like FRTs that require a separate trigger function for each shot. Allowing the indictment to stand would not only contravene the statutory framework but also set a dangerous precedent for unchecked agency reinterpretation in criminal law. Therefore, this Honorable Court should find that the ATF's interpretation exceeds statutory boundaries and dismiss the indictment against Mr. Alicea, as it rests on a misapplication of the law.

## I. Principle of Legality

The principle of legality—the requirement that laws be clear and not subject to arbitrary expansion—demands that Mr. Alicea's indictment be dismissed. The ATF's actions are not just a

misinterpretation of the law; they represent an unlawful exercise of power that infringes upon the rights guaranteed by the Constitution.

Proper judicial interpretation of criminal statutes is not merely a procedural necessity but a constitutional mandate. The maxim *nullum crimen sine lege, nulla poena sine lege* reminds us that the courts may not punish conduct as criminal unless that conduct has transgressed the clear, plain, or fair meaning of the defined offense. United States v. Davis, 576 F.2d 1065, 1069 (3d Cir. 1978). *See* generally H. Packer, The Limits of the Criminal Sanction 79-96 (1968) (discussing "principle of legality," "that conduct may not be treated as criminal unless it has been so defined by [a competent] authority . . . before it has taken place," as implementing separation of powers, providing notice, and preventing abuses of official discretion) (quotation at 80); J. Jeffries, *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189 (1985). This requirement is more than a procedural safeguard; it is a fundamental aspect of due process, ensuring that individuals are given fair notice of what constitutes criminal behavior and that the government's power to define crimes is exercised within the limits prescribed by law.

In this instance, the ATF's attempt to expand the statutory definition of "machinegun" to include FRTs is precisely the kind of overreach that the principle of legality is designed to prevent. The statutory language is clear and unambiguous, and any effort to broaden it through agency interpretation undermines the very structure of criminal law. The principle of legality protects against such arbitrary expansions, ensuring that only conduct clearly defined as criminal by law is subject to prosecution. This overreach not only undermines the rule of law, but also poses a direct threat to the separation of powers, which mandates that the creation of criminal laws is the exclusive domain of the legislature, not administrative agencies.

Therefore, this Honorable Court must adhere to the principle of legality and reject the ATF's unlawful expansion of the statutory definition of a "machinegun." The indictment against Mr. Alicea, predicated on this misinterpretation, must be dismissed as a matter of law, as it fails to meet the constitutional requirements for criminal liability. The ATF's actions in this case not only violate the statutory text, but also infringe upon the fundamental legal principles that protect individuals from arbitrary and unjust prosecution.

### J.    Rule of Lenity Requires Dismissal

The statutory definition of a "machinegun" as articulated in 26 U.S.C. § 5845(b) is clear and unambiguous, as reaffirmed by the Supreme Court in *Garland*. This ruling emphasizes that statutory language must be interpreted according to its plain meaning, leaving no room for expansive or creative interpretations by regulatory agencies. Given this authoritative decision, there is no ambiguity in the statutory definition of a machinegun, especially regarding devices such as FRTs.

However, even if one were to argue that any ambiguity exists in the statutory definition of a "machinegun"—which clearly does not—the rule of lenity mandates that such ambiguity be resolved in favor of the defendant. This fundamental principle of criminal law further underscores the necessity to dismiss the indictment. As the Supreme Court has articulated, "the rule of lenity tells us to construe ambiguous statutes in favor of criminal defendants." Loper Bright Enters. v. Raimondo, 144 S. Ct. 2244, 2308 (2024).

### IV.    CONCLUSION

The superseding indictment against Mr. Alicea must be dismissed for failing to state an offense under 18 U.S.C. §§ 922(o) and 924(a)(2). The Government's case hinges on the flawed assertion that FRTs convert firearms into "machineguns" as defined by 26 U.S.C. § 5845(b). However, as

demonstrated throughout this motion, FRTs do not meet the statutory criteria for a machinegun, as they require a separate and distinct function of the trigger for each shot fired.

The Supreme Court's decisions in *Garland* and *Loper Bright Enterprises* reaffirm the necessity of adhering to the plain meaning of statutory language. These rulings make it unequivocally clear that regulatory agencies like the ATF cannot expand or reinterpret statutory definitions beyond what Congress explicitly intended. The ATF's attempt to classify FRTs as machineguns not only exceeds its regulatory authority, but also violates the fundamental principles of criminal law, including the principle of legality and the rule of lenity.

The principle of legality requires that laws be clear and not subject to arbitrary interpretation or expansion by regulatory bodies. The rule of lenity further mandates that any ambiguity in criminal statutes be resolved in favor of the defendant. In this case, the statutory language is neither ambiguous nor supportive of the Government's expansive interpretation. The ATF's classification of FRTs as machineguns is a clear overreach that infringes upon Mr. Alicea's constitutional rights and undermines the integrity of the statutory framework.

By allowing this indictment to proceed, this Court would be endorsing an unlawful expansion of criminal liability based on an unsustainable legal foundation. Such a precedent would have far-reaching and dangerous implications for the separation of powers and the rule of law. Therefore, this Honorable Court should dismiss the indictment with prejudice, thereby upholding the Constitution, protecting the rights of individuals, and ensuring that justice is served in accordance with the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 31[th] day of August 2024.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the parties of record.

*/s/<u>**Suzette Brito Santos**</u>*
Suzette Brito Santos, Esq.
USDC-PR 307411
103 Street Onix
Río Grande, PR 00745
787-423-7381
sbritolaw@gmail.com

*/s/<u>**Wilfredo Díaz Narváez**</u>*
Wilfredo Díaz-Narváez, Esq.
USDC-PR 215211
PO Box 31270
San Juan, PR 00929-2270
787-759-7269
Fax: 787-753-4598
attwdn@hotmail.com

*/s/<u>**Victor A. Ramos Rodriguez**</u>*
Victor A. Ramos Rodriguez, Esq.
USDC-PR 130202
PO Box 9465
Plaza Carolina Station
Carolina, PR 00988-9465
787-753-4241
abogpr@aol.com

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives
*Office of Enforcement Programs and Services*
*Office of Field Operations*

Washington, DC 20226
www.atf.gov

March 22, 2022

## OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently examined devices commonly known as "forced reset triggers" (FRTs) and has determined that some of them are "firearms" and "machineguns" as defined in the National Firearms Act (NFA), and "machineguns" as defined in the Gun Control Act (GCA).

These particular FRTs are being marketed as replacement triggers for AR-type firearms. Unlike traditional triggers and binary triggers (sometimes referred to generally as "FRTs"), the subject FRTs do not require shooters to pull and then subsequently release the trigger to fire a second shot. Instead, these FRTs utilize the firing cycle to eliminate the need for the shooter to release the trigger before a second shot is fired. By contrast, some after-market triggers have similar components but also incorporate a disconnector or similar feature to ensure that the trigger must be released before a second shot may be fired and may not be machineguns.

Both the NFA and GCA regulate machineguns. "Machinegun" is defined under 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(23) as—

> Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, *or combination of parts designed and intended, for use in converting a weapon into a machinegun,* and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. (Emphasis added.)

ATF's examination found that some FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger. For this reason, ATF has concluded that FRTs that function in this way are a combination of parts designed and intended for use in converting a weapon into a machinegun, and hence, ATF has classified these devices as a "machinegun" as defined by the NFA and GCA.

Accordingly, ATF's position is that any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a "machinegun", and is accordingly subject to the GCA prohibitions regarding the possession, transfer, and transport of machineguns

**OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES** (cont.)

under 18 U.S.C. §§ 922(o) and 922(a)(4).  They are also subject to registration, transfer, taxation, and possession restrictions under the NFA. *See* 26 U.S.C. §§ 5841, 5861; 27 CFR 479.101.

Under 26 U.S.C. § 5871, any person who violates or fails to comply with the provisions of the NFA may be fined up to $10,000 per violation and is subject to imprisonment for a term of up to ten years.  Further, pursuant to 26 U.S.C. § 5872, any machinegun possessed or transferred in violation of the NFA is subject to seizure and forfeiture.  Under 18 U.S.C. § 924(a)(2), any person who violates § 922(o) may be sent to prison for up to 10 years and fined up to $250,000 per person or $500,000 per organization.

Based on ATF's determination that the FRTs that function as described above are "machineguns" under the NFA and GCA, ATF intends to take appropriate remedial action with respect to sellers and possessors of these devices.  Current possessors of these devices are encouraged to contact ATF for further guidance on how they may divest possession.  If you are uncertain whether the device you possess is a machinegun as defined by the GCA and NFA, please contact your local ATF Field Office.  You may consult the local ATF Office's webpage for office contact information.

Assistant Director
Enforcement Programs and Services

GEORGE
LAUDER

Digitally signed by
GEORGE LAUDER
Date: 2022.03.22
13:25:39 -04'00'

Assistant Director
Field Operations



Brian Luettke
Luettke Firearms Consulting, Inc.
5557 28th Street SE Ste 205
Grand Rapids, MI 49512

August 13, 2024

Dear Suzette Brito Santos, Esq,

On July 30, 2024, I observed the test firing of two firearms conducted by ATF Special Agent
Tim Hunt at the Walker Police Range, Walker, Michigan. Prior to the test firing, I photographed
the firearms and after the test firing I examined the two firearms and the trigger components.
Also present for the test fire and examination were ATF Special Agent Sara Choi and ATF intern
Payton Pilarski.

The two firearms that were test fired and later examined are identified as:

1. Sharps Bros MFG, caliber .40 S&W, model JACK9, serial number J9-03124.
   This firearm had a Powered by Graves, model Alamo-15 trigger installed. The Alamo-
   15 is further described as a Forced Reset Trigger (FRT). The firearm also had a Maxim
   Defense pistol arm brace attached.

2. ZEV Technologies Inc, caliber .300 Blackout, model ZEV-FL, serial number ZFL09327.
   This firearm had a Powered by Graves, model Alamo-15 trigger installed. The Alamo-
   15 is further described as a Forced Reset Trigger (FRT). The firearm also had a SB
   Tactical pistol arm brace attached.

SA Hunt fired the Sharps Bros firearm with one round, followed by three rounds, five rounds,
and five rounds. The firearm functioned as designed and as a semiautomatic firearm.

SA Hunt fired the ZEV Technologies firearm with one round, followed by three rounds, five
rounds, and five rounds. The firearm functioned as designed and as a semiautomatic firearm.

During the test firing, I recorded S/A Hunt from his left side shooting the firearms and I focused
my attention on the movement (function) of the trigger. After S/A Hunt pulled the trigger
rearward and fired a shot, his trigger finger moved forward along with the trigger to the reset
position. This sequence of firing continued until he fired all of the rounds in the magazine.

This demonstrated the firearm functioned as a semiautomatic and not as a machinegun as defined
in Title 26 U.S.C. §5845(b) since the firearms did not shoot more than one round by a single

1

function of the trigger.

The recent June 14, 2024 Supreme Court decision in *Garland v. Cargill, 602 U.S. 406 (2024)* clearly described the importance of the words in the machinegun definition and what "single function of the trigger" is when determining whether or not a firearm is functioning as a machinegun. And it's worth repeating, the word "pull" or "single pull of the trigger" is not anywhere in the definition of a machinegun as I previously wrote about in my reports to you.

After the test firing was completed, I inspected both firearms and removed the semiautomatic Alamo-15 triggers from the firearms. After inspecting the trigger units, I put them back into the firearm's lower receiver.

On August 6, 2024, I reviewed SA Hunt's Report of Investigation – Report #20 regarding the firearms test firing. He described the number of rounds fired from each firearm and added the sentence "Each time SA Hunt applied constant pressure to the trigger and the firearm fired all rounds within the magazine."

SA Hunt apparently felt it was necessary to add that sentence, which has no bearing on whether or not a firearm is a semiautomatic or a machinegun. SA Hunt did not state an opinion of the classification of the firearms being semiautomatic or machineguns either. Furthermore, he failed to indicate and write in his report the Alamo-15 triggers reset forward after each shot, which is a separate function of the trigger.

The Supreme Court wrote on page 8 in *Garland v. Cargill* **"Because the statutory definition is keyed to a "function of the trigger," only the trigger assembly is relevant for our purposes".** Additionally, the Supreme Court stated on page 13 **"But §5845(b) does not define a machinegun based on what type of human input engages the trigger – whether it be pull, bump, or something else".**

Based upon watching the function of the triggers during the test firing, the firearms and triggers examination, my machinegun shooting experience starting back in 1984, and the Supreme Court's decision in *Garland v. Cargill*, it is my opinion the two Powered by Graves model Alamo-15 triggers are not machineguns as defined in Title 26 U.S.C. §5845(b), whether or not they are installed in the Sharps Bros and/or ZEV Technologies firearms.

Sincerely,

Brian Luettke
Firearm Consultant